J-S08036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATIAS J. MARTINEZ MORALES | : | |
| | : | |
| Appellant | : | No. 1760 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 28, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002648-2023

BEFORE: DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED JUNE 27, 2025**

    Appellant, Matias J. Martinez Morales, appeals from the judgment of sentence imposed by the Bucks County Court of Common Pleas after a jury found him guilty of single counts of rape of a child, rape by forcible compulsion, indecent assault by forcible compulsion, and terroristic threats, and two counts each of indecent assault of a person less than thirteen years of age, unlawful contact with a minor, and corruption of minors.[1] He claims that the trial court erred by refusing to give a prompt complaint jury instruction and further challenges the discretionary aspects of his sentence. Upon review, we affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(c), 3121(a)(1), 3126(a)(2), 2706(a)(1), 3126(a)(7), 6318(a)(1), and 6301(a)(1)(i)/(a)(1)(ii), respectively.

At trial, Appellant's great-niece, G.M., then seventeen years old, testified that Appellant, her mother's uncle, lived with her family at their Bucks County home when she was about four to six years old. *See* N.T. Trial, 1/30/24, 9-12. She recalled that, starting when she was four years old, Appellant would put his penis in her vagina. *Id.* at 12. She remembered that the sexual activity first began during the summer after she finished preschool, and it would happen in his second-floor room in their home. *Id.* at 12-13. She confirmed that no one else saw these incidents of abuse, noting, "He would make sure no one would find out." *Id.* at 13-14. When the abuse occurred, while other people were in the home with them, G.M. recalled that Appellant would put "some type of towel or anything to cover the door to the bottom so no one would hear or see" them. *Id.* at 14. She explained that the abuse mainly happened when her parents were "stuck at work" at their family-owned grocery store and would typically occur on the floor in Appellant's room on a mattress topper on which Appellant would sleep. *Id.* at 8, 14-15.

G.M. recalled that, during some of the incidents of abuse, Appellant would have her sit on top of him, while clothed, and "grind on him." N.T. Trial, 1/30/24, 15. In other occurrences, he would take off her clothes, and he would remain clothed, except for him "lower[ing] his pants to where his penis was able to make contact" with her. *Id.* G.M. confirmed that Appellant would penetrate her vagina with his penis, it would cause her pain, she would beg him to stop, and she would try to fight him off, though, at four years of age,

- 2 -

she lacked the capacity "to really move him." *Id.* at 16-17. She recalled her head hitting the legs of a nearby dresser during the abuse on the floor. *Id.* at 17. She described that the abuse would typically occur when she and Appellant were alone in the family home. *Id.* at 33 ("But if no one was really home, that's when he would really take the opportunity.").

During the first instance of this abuse, G.M. remembered that Appellant covered her mouth. *See* N.T. Trial, 1/30/24, 17. He also told her not to say anything and to be quiet. *Id.* Appellant put a pocketknife to her throat and told G.M. that "if [she] ever told anybody [about the abuse,] he would either kill [her] or [her] family." *Id.*

After the abuse occurred for about three to four years, G.M., then about seven or eight years old, told her mother that Appellant had "touched her." N.T. Trial, 1/30/24, 19, 62. During that time, she did not tell anyone else about the abuse because she was scared, knowing what Appellant could do after his threat with the knife, and because she did not think anyone would believe her. *Id.* at 19-20. G.M.'s mother told G.M.'s father about what G.M. said about Appellant touching her, and the parents then asked Appellant to leave their home. *Id.* at 20-21, 62-63. The abuse of G.M. continued until Appellant subsequently left the home. *Id.* at 64. G.M.'s mother did not share G.M.'s report of Appellant touching her with the police or a doctor. *Id.* at 21, 183. In her junior year of high school, G.M. informed a counselor at her school of the abuse. *Id.* at 19, 39-44, 46. G.M. was subsequently interviewed about her report at the Children's Advocacy Center ("CAC"). *Id.* at 18, 225-26. On

November 2, 2022, about two weeks after the CAC interview, Detective Ryan Naugle interviewed G.M. about her abuse report. *Id.* at 18, 85-86, 226, 257, 274. Detective Naugle also conducted a second interview of G.M. on December 12, 2022. *Id.* at 275.

G.M.'s older sister, R.M., then twenty-two years old, also testified at trial about Appellant abusing her. *See* N.T. Trial, 1/30/24, 112. She recalled that, when she was six years old, Appellant would repeatedly put his hand in her pants and underwear and touch her vagina. *Id.* at 117. She noted that those touching incidents would occur on the living room couch in their home, after he would place R.M. on his lap, and they would occur when her parents were not home and were busy working and when others were upstairs in the home and not in the same room as them. *Id.* at 118-19. R.M. testified that these incidents occurred about five times over a one-year period, starting when she was six years old, at which time G.M. was two years of age. *Id.* at 120. She recalled that Appellant tried to get her to go upstairs to his bedroom, but she did not, because it "didn't feel right" to her, and she was "really scared by that time." *Id.* at 121.

R.M. remembered that the touching incidents initially stopped because she told her mother what had happened, and her mother then tried to keep her away from Appellant. *See* N.T. Trial, 1/30/24, 121. After the episodes stopped for a period of time, she noted that "it happened a few times after that," before they stopped completely. *Id.* She also remembered a time when her parents talked to Appellant in their kitchen about what was going

on between him and R.M. *Id.* at 122. She recalled her mother telling her that another family member had seen Appellant "trying to call [her] to his room and that [the other family member] suspected something was happening to [her]." *Id.* at 122-23. She then told her mother what had happened. *Id.* at 123. After this kitchen conversation, R.M.'s mother did not try to keep her away from Appellant, call the police, or take R.M. to a doctor. *Id.* at 124.

On November 28, 2022, Detective Naugle interviewed R.M. *See* N.T. Trial, 1/30/24, 227, 274. The detective wanted to interview her to see if she had any knowledge about what had happened to G.M. (she did not), and she then disclosed "about [Appellant] touching her on the couch." *Id.* R.M. first learned about Appellant's abuse of her younger sister, G.M., after G.M. "confided in her guidance counselor" and "the whole investigation started." *Id.* at 125. After that occurred and her mother told her that they "started a police report against [Appellant] because he had done things to [G.M.]," R.M. told her mother that Appellant "had done things to [her] as well." *Id.* at 130. The now-fiancée of the two victims' brother testified at trial that, between eight and twelve years prior (when the fiancée was in high school), R.M. confided to her that Appellant, identifying him by name, had sexually assaulted her and that she had told her mother "about the situation." *Id.* at 167-68.

The victims' mother testified that she first learned about Appellant touching R.M. when they had an interview with a detective; she asserted that

- 5 -

she did not remember that R.M. had told her about the touching "when she was a little girl." N.T. Trial, 1/30/24, 181-82. The victims' mother further testified that she found out about Appellant touching G.M. around the years of 2010 and 2012, at which time she spoke to G.M.'s father, and they decided that Appellant had to leave their home. *Id.* at 182-83. She noted that she became aware that Appellant had raped G.M. "around a year and a half [to] a year and eight months" prior to trial. *Id.* at 186-87. The victims' father testified that he did not remember that R.M. previously "told [him] what [had] happened" and that he "confronted [Appellant] about it;" he agreed that he could not recall much about that time period because of his "drinking." *Id.* at 211, 213-14. He testified that he asked Appellant to leave their home because Appellant's "attitude was being a little bit strange." *Id.* at 211-12. He asserted that he did not know about G.M.'s allegations against Appellant then, "but [he] was getting an idea [of it] because of his attitude." *Id.* at 213.

Appellant proceeded to be tried by a jury on January 29-31, 2024, after which the jury found Appellant guilty of the above-referenced offenses. *See* Bucks County Criminal Court Sheet, 1/31/24, 1; N.T. Trial, 1/31/24, 170-73. At trial, the Commonwealth presented testimony from both victims, the victims' parents, the fiancée of the victims' oldest brother, and the detective who interviewed the victims, the victims' parents, and the other people who lived in the victims' home during the alleged periods of sexual abuse. Appellant testified and presented the testimony of his son who lived in the victims' home from 2007 to 2014, that son's wife, that son's mother-in-law,

Appellant's niece who lived in the victims' home from 2008 to 2011, Appellant's other son who lived in the victims' home for two months in 2011, Appellant's nephew who lived in the victims' home from 2008 to 2011, Appellant's wife, and Appellant's remaining son who did not reside at the victims' home. The court deferred sentencing for the preparation of a Sexual Offenders Assessment Board (SOAB) evaluation. *See* Bucks County Criminal Court Sheet, 1/31/24, 1; Order (SOAB evaluation), 1/31/24, 1; N.T. Trial, 1/31/24, 184.

On May 28, 2024, the court sentenced Appellant to an aggregate term of eighteen and one-half to forty-seven years' imprisonment, to be followed by a five-year probation term.[2] *See* Bucks County Criminal Court Sheet,

_____

[2] The aggregate term included fifteen to forty years' imprisonment for rape of a child (with respect to G.M.), three and one-half to seven years' imprisonment for one of the counts of indecent assault of a person less than thirteen years of age (with respect to R.M.), and the five-year probation term was imposed for rape by forcible compulsion (with respect to G.M.). *See* Bucks County Criminal Court Sheet, 5/28/24, 1; N.T. Sentencing Hearing, 5/28/24, 21. No further penalty was imposed on the remaining convictions. *See* N.T. Sentencing Hearing, 5/28/24, 21.

The sentence for rape of a child was within the standard range recommended by the Sentencing Guidelines. *See* N.T. Sentencing Hearing, 5/28/24, 20 (sentencing court: "On count 2 of the Bill[s] of information, [with respect to rape of a child,] wherein the guidelines begin with a mandatory minimum period of incarceration of 10 years in the standard range from 10 to 20 years as a minimum range."). The Sentencing Guidelines recommended a minimum imprisonment term for rape of a child of the applicable mandatory minimum term of ten years' imprisonment to the statutory limit of a minimum imprisonment term of twenty years. *See* 18 Pa.C.S. § 3121(e) (setting a forty-year imprisonment maximum for convictions under 18 Pa.C.S. § 3121(c)); 18 Pa.C.S. § 9718(a)(3) (designating a ten-year mandatory

*(Footnote Continued Next Page)*

5/28/24, 1. Appellant did not file any post-sentence motions. He filed a timely notice of appeal and two court-ordered concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[3] *See* Notice of

_____

minimum imprisonment applicable to convictions under 18 Pa.C.S. § 3121(c) where the victim is less than thirteen years of age); 204 Pa. Code § 303.15 (7th ed., amend. 4 supplement) (designating an offense gravity score of fourteen for a conviction under 18 Pa.C.S. § 3121(c)); 204 Pa. Code § 303.16(a) (7th ed., amend. 4) (basic sentencing matrix); 18 Pa.C.S. § 3121(e) (setting a forty-year imprisonment maximum for convictions under 18 Pa.C.S. § 3121(c)). The record reflects that Appellant had a prior record score of zero because there was no dispute that Appellant had no prior criminal record. *See* N.T. Sentencing Hearing, 5/28/24, 16) (defense counsel: "Notwithstanding the current allegations, my client has never been accused of any other crimes.").

For the indecent assault of a person less than thirteen years of age conviction, with respect to R.M., the court imposed a term above the aggravated range recommended by the Sentencing Guidelines. *See* N.T. Sentencing Hearing, 5/28/24, 20-21 (sentencing court: "On Count 6[,] the sentence I am going to impose on that count exceeds the aggravated range as a minimum sentence[,] but is imposed, one, because it is directed as the offense to a separate individual, and because I will not be imposing sentences on each of the counts."). The Sentencing Guidelines recommended a minimum imprisonment term for that offense of three to twelve months' imprisonment, plus or minus six months for aggravating or mitigating circumstances. *See* 204 Pa. Code § 303.15 (6th ed., rev.) (designating an offense gravity score of six for a third-degree felony conviction under 18 Pa.C.S. § 3126(a)(7)); 204 Pa. Code § 303.16 (6th ed., rev.) (basic sentencing matrix).

[3] Appellant's notice of appeal indicated that he is appealing "the judgment of conviction entered in this matter, by court order entered on January 31, 2024, and the judgment of sentence entered in this matter, by court order on May 28, 2024." Notice of Appeal, 6/27/24, 1. On direct review in criminal cases, however, the "appeals lie from [the] judgment of sentence rather than from the verdict of guilt." *Commonwealth v. O'Neill*, 578 A.2d 1334, 1335 (Pa. Super. 1990). Accordingly, our docket and the caption for this memorandum have been corrected to reflect that the appeal is only from the judgment of sentence imposed on May 28, 2024.

Appeal, 6/27/24, 1; Order (Rule 1925(b) statement), 7/29/24, 1; Motion for Extension of Time, 7/31/24, 1-4; Order (Rule 1925(b) Statement Deadline Extension), 8/7/24, 1; First Rule 1925(b) Statement, 8/21/24, 1-2; Second Rule 1925(b) Statement, 10/1/24, 1-2.

Appellant presents the following questions for our review:

1. Whether the [trial] court erred as a matter of law in refusing to give to the jury the prompt complaint jury instruction in certain sexual offenses although it was specifically requested by defense counsel and included in [Appellant's] proposed instructions?

2. Whether the sentence imposed on [Appellant] as to Count 2, rape of a child, was harsh and excessive and an abuse of discretion since the [trial] court failed to properly consider all of the sentencing factors of 42 Pa.C.S.[ ] § 9721(b) or any mitigating evidence when it imposed the sentence in question?

3. Whether the [trial] court erred and abused its discretion in that it sentenced [Appellant] in excess of the aggravated range on Count 2, rape of a child, without considering mitigating factors and only considered the seriousness of the offense when it imposed sentence?

4. Whether the [trial] court erred and abused its discretion in sentencing [Appellant] on Count 2, rape of a child, in that it sentenced him outside the guidelines and failed to state on the record his permissible range of sentence under the guidelines?

5. Whether the sentence imposed on [Appellant] as to Count 6, indecent assault [of a] person less than [thirteen] years of age, was harsh and excessive and an abuse of discretion since the [trial] court failed to properly consider all of the sentencing factors of 42 Pa.C.S.[ ] § 9721(b) or any mitigating evidence when it imposed the sentence in question?

6.   Whether the [trial] court erred and abused its discretion in that it sentenced [Appellant] in excess of the aggravated range on Count 6, indecent assault [of a] person less than [thirteen] years of age, without considering mitigating factors and only considered the seriousness of the offense when it imposed sentence?

7.   Whether the [trial] court erred and abused its discretion in sentencing [Appellant] on Count 6, indecent assault [of a] person less than [thirteen] years of age, in that it sentenced him outside of the guidelines and failed to state on the record his permissible range of sentence under the guidelines?

Appellant's Brief, 7-8 (unnecessary capitalization omitted).

In his first issue, Appellant asserts that the trial court erred by not issuing a prompt complaint jury instruction which his counsel allegedly requested and included in his proposed jury instructions. *See* Appellant's Brief, 15-19. Improperly citing one of our unpublished memorandum decisions from 2013, he notes that "the long period of time that the Complainants waited to report [his] abuse would normally require a prompt complaint instruction." *Id.* at 17; *see also* Pa.R.A.P. 126(b) (authorizing citation to non-precedential decisions filed after May 1, 2019, for persuasive value); 210 Pa. Code § 65.37(B) (internal operating procedure providing exceptions for citing pre-May 1, 2019 decisions of this Court, none of which apply here). He then informs us that he has been unable to find any published opinions "where a period of years between the alleged abuse and the report thereof did not warrant such an instruction." Appellant's Brief, 17 (emphasis removed). He concludes by claiming the trial court committed reversible error

based on the testimony of the victims, which suggested that they were aware of the offensiveness of his contact with them years prior to their reports of his abuse, thereby requiring a prompt complaint jury instruction. ***See id.*** at 18-19.

In its opinion, the trial court states that it had two grounds for not issuing a prompt complaint instruction. First, the court writes that, "[g]iven the ages and circumstances of the victims," noting that the victims were between the ages of four and six when their abuse began and that Appellant had threatened G.M. with a knife, "a prompt complaint would have been a rather unusual occurrence." Trial Court Opinion, 10/7/24, 4. Second, the court reasoned that the refusal to issue a prompt complaint instruction did not prejudice Appellant because there had been vigorous cross-examination of the victims, and the court had instructed the jury "to consider motive in assessing victim credibility." ***Id.***

As a preliminary matter, Appellant has failed to demonstrate that the instant claim was preserved for our review. He repeatedly asserts that a prompt complaint jury instruction "was specifically requested by defense counsel and included in [his] proposed instructions," Appellant's Brief at 12, 15, but he does not identify where his requests for a prompt complaint jury instruction, or an objection to not issuing such an instruction, can be found in the record certified for this appeal, and our independent review has revealed none. His failure to direct us to the portion of the record where he preserved this claim is a violation of Pennsylvania Rule of Appellate Procedure 2119(e).

*See* Pa.R.A.P. 2119(e) ("Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross-reference to the page or pages of the statement of the case which set forth the information relating thereto as required by Pa.R.A.P. 2117(c), or substantially the same information.").

With respect to waiver of jury instruction error claims on direct review, our Supreme Court has stated:

> "A general exception to the charge to the jury will not preserve an issue for an appeal. Specific exception shall be taken to the language or omission complained of." Pa.R.A.P. 302(b). Additionally, […] in the criminal trial context, the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points.

*Commonwealth v. Sanchez*, 82 A.3d 943, 978 (Pa. 2013) (internal citation omitted). *See Commonwealth v. Pressley*, 887 A.2d 220, 224 (Pa. 2005) ("[t]he pertinent rules [of criminal procedure] require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction"); Pa.R.Crim.P. 647(C) ("No portion of the charge **nor omissions** from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury.") (emphasis added).

Our independent review of the notes of testimony from the trial failed to uncover any discussion concerning a request for the issuance of a prompt complaint jury instruction, let alone a ruling on a request for such an instruction or any specific objection relating thereto. At the start of the last day of the trial, the court summarized a jury charging conference that occurred outside the record, as follows:

> THE COURT: Okay. Just for purpose of the record, I had the opportunity this morning to meet with counsel to go over jury instructions. Essentially, we have agreed what instructions will be provided.
>
> [Defense counsel], if you want later on for us to go through the entire list of what we went through and which ones are and are not included, we can do that when we take a break later on.

N.T. Trial, 1/31/24, 4. In an ensuing recess during the day, the court noted that it had been "looking through the requested jury charges." *Id.* at 94. The court then addressed a request for an instruction on "impeachment by a prior inconsistent statement," and denied that request after Appellant's counsel conceded that, while "[t]here were varying statements … none of them were inconsistent." *Id.* at 94-95. No further discussions about the jury instructions occurred in the notes of testimony leading up to the charges issued, and Appellant did not raise any objections following the issuance of the jury instructions. *Id.* at 164. To the extent that Appellant printed out suggested jury instructions for the court, he did not file a copy with the court nor formally

moved any request for jury instructions into the record certified for this appeal.

Here, in the absence of any discussion of a request for a prompt complaint instruction or objection to the lack of such instruction in the record, and any related effort by Appellant to direct us to portions of the record reflecting the preservation of this claim, pursuant to Pa.R.A.P. 2119(e), we must conclude that Appellant waived his issue concerning the lack of a prompt complaint instruction.[4] **See** Pa.R.A.P. 302(b); Pa.R.Crim.P. 647(C).

_____

[4] We note that, as of September 2024, the suggested standard criminal jury instruction for a "failure to make prompt complaint in certain sexual offenses" has not only been deleted from the Pennsylvania Suggested Standard Criminal Instructions, but the Pennsylvania Supreme Court's Suggested Standard Criminal Jury Instructions Subcommittee has specifically discouraged the use of the former instruction:

> The majority of the subcommittee voted to delete this instruction and no longer recommends its use because Instruction 4.13A is incompatible with 18 Pa.C.S. § 3106, which provides in relevant part, "No instructions shall be given cautioning the jury to view the complainant's testimony in any other way than that in which all complainants' testimony is viewed." Former Instruction 4.13A was derived from 18 Pa.C.S. § 3105, which historically required a prompt complaint within three months in order to prosecute a sexual offense. In 1995, the General Assembly revised 18 Pa.C.S. § 3105 to remove the prompt complaint requirement and revise 18 Pa.C.S. § 3106 to remove the requirement that the testimony of complaining witnesses in sexual crimes must be viewed differently. Both **Commonwealth v. Snoke**, 580 A.2d 295, 297 (Pa. 1990), and **Commonwealth v. Lane**, 555 A.2d 1246, 1251 (Pa. 1989), indicate that 18 Pa.C.S. § 3105 authorizes related arguments by the parties, not specifically the now-deleted jury instruction. Because the instruction is deleted, the majority of the subcommittee believes that attorneys should present relevant

*(Footnote Continued Next Page)*

In Appellant's remaining issues on appeal, he challenges the discretionary aspects of his sentence. In particular, he claims that the sentencing court imposed excessive terms of imprisonment by: (1) failing to consider the sentencing factors of 42 Pa.C.S. § 9721(b); (2) failing to consider mitigating evidence; (3) only considering the seriousness of his offenses; (4) failing to state reasons on the record for imposing terms in excess of the terms recommended by the Sentencing Guidelines; and (5) not stating on the record the terms recommended by the Sentencing Guidelines. **See** Appellant's Brief, 19-32.

As an initial matter, we observe that challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as a matter of right. **See Commonwealth v. Perzel**, 291 A.3d 38, 46 (Pa. Super. 2023). Before we can reach the substantive merits of a discretionary sentencing issue:

> [w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at

---

arguments on this issue during closing arguments rather than through the use of a jury instruction.

This section will be completely deleted, and other sections will be renumbered in future editions. In order to avoid confusion, however, Instruction 4.13A remains in this edition. For historical purposes only, the subcommittee is providing the now-deleted Instruction 4.13A below, although it discourages its use…

Pa. SSJI (Crim.) § 4.13A (4th ed. 2024), *subcommittee note*.

sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[ ] § 9781(b).

**Commonwealth v. Watson**, 228 A.3d 928, 935 (Pa. Super. 2020) (citation omitted).

Here, we note that there are at least two procedural barriers to our ability to conduct substantive review of Appellant's sentencing claims. First, Appellant appears to have waived his discretionary sentencing challenges by not preserving them before the sentencing court. "Issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." **Commonwealth v. Lamonda**, 52 A.3d 365, 371 (Pa. Super. 2012) (*en banc*) (citation omitted). In this case, Appellant did not raise any objections to the discretionary aspects of his sentence after its imposition and, despite being advised of his post-sentence motion rights, he did not file a post-sentence motion. Accordingly, he waived his sentencing claims for lack of preservation. **See, e.g.**, **Commonwealth v. Padilla-Vargas**, 204 A.3d 971, 976 (Pa. Super. 2019) (an appellant cannot cure the waiver of a sentencing claim by failing to raise it at sentencing or in a post-sentence motion by including the challenge in his Rule 1925(b) statement); **Commonwealth v. Tejada**, 107 A.3d 788, 799 (Pa. Super. 2015) (court must be given the opportunity to reconsider its sentence either at sentencing

or in a post-sentence motion in order for a discretionary sentencing claim to be "subject to our review").

Second, Appellant did not include the requisite Rule 2119(f) statement in his appellate brief. *See* Pa.R.A.P. 2119(f). The Commonwealth objects to this deficiency. *See* Appellee's Brief, 31 ("As to the third requirement and the Pa.R.A.P. 2119(f) statement, Appellant has also not complied with [that] obligation. Despite referencing the relevant caselaw and the need for a Rule 2119(f) statement, such a [s]tatement is not included in Appellant's brief."). As a result, Appellant's failure to include a separate Rule 2119(f) statement in his brief renders his sentencing challenges waived on appeal. ***See Commonwealth v. Griffin***, 149 A.3d 349, 353-54 (Pa. Super. 2016) (if appellant fails to include a Rule 2119(f) statement in his appellate brief and the Commonwealth objects, appellant waives his discretionary aspects of sentencing challenge).

Having concluded that Appellant failed to preserve his claims on appeal in the trial court and additionally, given that he failed to include a statement pursuant to Rule 2119(f) in his brief to permit the review of his discretionary sentencing claims, we affirm.

Upon observing that Appellant's brief and the trial court's opinion identify the minor victims in this case by their names, ***see*** Appellant's Brief, 9-10, Trial Court Opinion, Trial Court Opinion, 10/7/24, 1, we further direct the Prothonotary to seal the record for this appeal so as to avoid a violation of 42 Pa.C.S. § 5988(a) ("Notwithstanding any other provision of law to the

contrary, in a prosecution involving a minor victim of sexual or physical abuse, the name of the minor victim shall not be disclosed by officers or employees of the court to the public, and any records revealing the name of the minor victim shall not be open to public inspection."). **See also** 42 Pa.C.S. § 6308 (generally providing that law enforcement records pertaining to children shall not be open for public inspection).

Judgment of sentence affirmed. Record sealed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/27/2025